**J. V. CLEGHORN et al, Appellants,**

v.

**DALLAS POWER & LIGHT CO. et al, Appellees.**

No. A2496.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 21, 1981.

Rehearing Denied Feb. 11, 1981.

William L. Burnett, Wheat, Thornton & Burnett, Houston, for appellants.

Robert A. Wooldridge, Worsham, Forsythe & Samples, Dallas, for appellees.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

JUNELL, Justice.

This is an appeal from a summary judgment rendered in favor of defendants, lessees under thirteen coal and lignite leases, ordering that plaintiffs, lessors, take nothing by their suit. Plaintiffs filed suit for declaratory judgment and a decree cancelling the leases and/or an alternative decree requiring defendants to proceed in the exploration and development of plaintiffs' leased lands in accordance with an alleged implied covenant to develop within the time specified by the court or jury or suffer cancellation of the leases. Defendants sought summary judgment contending, inter alia, that the express terms of the subject leases preclude the existence of any implied covenant to develop. We affirm as to two of the leases and reverse and remand as to the remaining eleven.

The thirteen leases the subject of this suit were executed in the 1950's and early 1960's by plaintiffs or their successors in interest and L. D. Cross, Trustee of Texas Power and Light Company. In 1969, Cross assigned the leases to defendants who are electric utility companies. Eleven of the leases provide for no primary term during which the lessees are required to explore and develop the property, but rather allow lessees to continue the leases in effect indefinitely with no exploration or development merely by payment of nominal annual rentals. The remaining two leases provide for a twenty-year primary term at the expiration of which the leases will terminate unless coal or lignite is being produced from the subject property in commercial quantities. They also provide for payment of annual rentals during the primary term on the anniversary date of the lease so long as mining operations have not commenced. All thirteen leases provide for payment of

royalties once mining operations have commenced.

The rentals required by the subject lesses were paid by defendants until 1976–77, when plaintiffs refused to accept further rentals, declared the leases terminated, and asked defendants for releases of the leases. In September, 1977, plaintiffs filed suit in trespass to try title and asked for a declaratory judgment to declare the validity of or cancel the leases and clear title to plaintiffs' lands. On August 18, 1978, plaintiffs made demand on defendants to begin mining operations on the leased lands within a reasonable time or suffer forfeiture of the leases for failure to develop within a reasonable time. Defendants filed their motion for summary judgment asserting that the existence of the following language within the subject leases precludes the operation of any implied covenant to develop coal and lignite on plaintiffs' lands:

"It is understood between the parties hereto that this lease shall not be forfeited for any failure to prosecute mining operations on the lands herein described . . . nor shall any forfeiture be claimed or enforced for the breach of any implied covenant, but the title to the minerals in the land hereby leased shall not revert to [Lessor] or his assigns so long as the annual rentals as herein provided are being paid to [Lessees] . . . or so long as the lands covered hereby . . . are being mined as herein provided."

They also cited the following statement as being contained in other leases the subject of this litigation:

"Lessor acknowledges and agrees that development of coal or lignite reserves may not be practical for many years and therefore may be deferred for an extended period of time, and that the bonus paid for this lease covers all rights granted Lessee hereunder, including particularly the right to continue this lease in effect from year to year by the payment of the annual delay rental above provided, without exploratory or mining operations. There shall be no obligation on Lessee to begin or prosecute mining operations on the lands hereinabove described, nor to mine and remove all or any portion of the coal and lignite situated thereon, nor shall there be any implied covenant so to do."

We have carefully examined each of the leases attached to defendants' motion for summary judgment; and while the language first cited by defendants or language similar to it is found in each of the thirteen leases, the second provision cited by defendants is not to be found in any of the leases. Additionally, on appeal of the case, neither plaintiffs nor defendants referred to the second provision in either written brief or oral argument. Had such a provision been included in the leases, clearly it would constitute an express provision by the parties controlling on the issue of the lessees' obligation to explore and develop the subject leases because the parties would have specifically contracted regarding the issue. However, such not being the case we must analyze the first provision and its implication with respect first to the eleven "no-term" leases and then as to the two leases containing twenty-year primary terms.

In their fifth amended petition on file at the time of the summary judgment hearing, and as their sole contention on appeal, plaintiffs assert the above-quoted language should not be enforced to preclude operation of an implied covenant to explore and develop each of the subject leases. They contend the granting of the summary judgment was improper because a genuine issue of fact was presented by the summary judgment proof as to the existence of an implied covenant to reasonably explore and develop the minerals upon their leased lands. The relief requested by plaintiffs included a conditional or alternative decree requiring defendants to fulfill their obligation under the implied covenant to explore and develop within a time specified by the Court or jury or suffer cancellation of the subject leases.

Defendants contend there can be no implied covenants of exploration and development when the express terms of the leases specifically exclude such implied covenants,

citing *Freeport Sulphur Co. v. American Sulphur Royalty Co.,* 117 Tex. 439, 6 S.W.2d 1039 (1928); *W. T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27 (1929); *Gulf Production Co. v. Kishi,* 129 Tex. 487, 103 S.W.2d 965 (1937) and others. We find those cases inapplicable for that proposition for the reason that the agreement in each of them specifically defines the lessees' duty as regards development, whereas the leases here in issue do not speak specifically to the lessees' obligation to develop, but rather merely provide that no forfeiture will result from the failure to prosecute mining operations or the breach of any implied covenants. Defendants contend the above-quoted language constitutes an express provision negativing any implied covenants and that they are under no obligation whatsoever at any time to undertake any steps to explore or develop under the subject leases. We cannot agree. We find support in these cases for plaintiffs' argument to imply a covenant to explore and develop the subject leases.

The "no-term" provision found within eleven of the subject leases was originally developed for oil and gas leases and designed to get around the limited period of exploration of the short term leases previously used within the industry. By use of the "no-term" provision it was hoped there would be produced a lease by which the lessee could extend the period of exploration as long as he considered it to be worthwhile to pay a delay rental on it for that privilege. The advantage gained by use of such provision, which was to continue the lease in effect indefinitely without development, has been short-lived for the reason that the courts have considered the result to be unfair for its failure to bind lessee to any performance and have chosen either to find such leases unenforceable against the lessor, *National Oil & Pipe Co. v. Teel,* 67 S.W. 545 (Tex.Civ.App.1902) *aff'd on other grounds,* 95 Tex. 586, 68 S.W. 979 (1902), or have avoided an unfair result to the lessor by reading into the lease an implied condition that the lessee is under a duty to drill within a reasonable time and, for failure to do so could, upon proper notice, forfeit the lease for breach of the condition. 2 W. Summers, The Law of Oil and Gas § 289 (1959).

The general rule is that in the absence of an express provision governing exploration and development of the leased premises, an implied covenant arises out of necessity where it is clear that the purpose for which the lease is made is production of the minerals, as evidenced by the terms of the lease and the provision for payment of royalties. *Gulf Production Co. v. Kishi, supra,* 103 S.W.2d at 968. *W. T. Waggoner Estate v. Sigler Oil Co., supra* 19 S.W.2d at 29. Before a covenant will be implied it must appear from the contract that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, or that it is necessary to imply such a covenant in order to give effect to and effectuate the purpose of the contract as a whole. *Freeport Sulphur Co. v. American Sulphur Royalty Co., supra,* 6 S.W.2d at 1041.

In mineral leases for substances other than oil and gas, the same rule has been recognized in cases where the principal consideration to the lessor is his expectation of receiving royalties and no express provision is included within the lease regarding the lessee's obligation to explore, develop, and work (mine) the premises. Annot., 76 A.L.R.2d 721 (1961). The most recent of such cases is *Weed v. Brazos Elec. Power Co-op., Inc.,* 574 S.W.2d 570 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.) which involved a no-term coal and lignite lease containing a forfeiture clause almost identical to the one here at issue. The court there was asked to rule on the validity of such a lease, the plaintiff urging that the lease lacked mutuality in that it did not have a primary term during which the lessee must commence development or at the expiration of which ownership of the estate granted by the lease would revert to the lessor. The effect of such a no-term lease is to allow the lease to remain in force indefinitely merely by paying delay rentals. The court upheld the lease in *Weed,* finding it to

be valid and not terminated. Although the plaintiff in *Weed* did not raise the issue of breach of an implied covenant to develop or allege the defendants had delayed development of the land for an unreasonable period of time, the court recognized that in such a situation the lessee may not delay development for an unreasonable period of time, citing *Stephens County v. Mid-Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S.W.2d 290 (1923); *Texas Co. v. Davis*, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923); and *Rosson v. Bennett*, 294 S.W. 660 (Tex.Civ. App.—Waco 1927, no writ). What constitutes a "reasonable time" is not defined by the law, but rather is a question to be decided by the judge according to the facts and circumstances of the case or as ascertained by the findings of the jury. *Benavides v. Hunt*, 79 Tex. 185, 15 S.W. 396 (1891).

The usual remedy for breach of a lessee's implied covenant to develop is normally damages; however, under extraordinary circumstances, where it is established that there is no other adequate relief, a court of equity may consider an action to cancel the lease in whole or in part. *W. T. Waggoner Estate v. Sigler Oil Co., supra* 19 S.W.2d at 29. Such cancellation should take the form of an alternative or conditional decree, requiring the lessee to do those things necessary to fulfill his obligation under the implied covenant within the time specified by the court or suffer cancellation. In addition to showing that an action for damages does not provide an adequate remedy at law, plaintiff must also show that defendants do not intend to develop the leased lands as contemplated by the terms of the lease. *Rendleman v. Barlett*, 21 S.W.2d 58 (Tex.Civ.App.—Austin 1929, writ ref'd). As to the eleven "no term" leases, plaintiffs have sufficiently pled circumstances which, if proved, may require relief in the form of an alternative or conditional decree. If the trial court should so hold, defendants must be given an opportunity to fulfill their obligations within the time period which the court determines to be reasonable, which time period shall run from the date of such judgment forward.

The two leases with twenty-year primary terms were executed on June 5, 1961. By their terms they will expire on June 6, 1981 unless coal or lignite is being produced therefrom in commercial quantities. As to those leases, we affirm the summary judgment. As to the remaining eleven leases, we hold that the summary judgment should not have been granted for the reason that the proof presented establishes the existence of an implied covenant to reasonably develop the minerals subject to the leases, and remand the case to the court below for trial on the merits.