Don W. SLAUGHTER, et al., Appellants,

v.

CITIES SERVICE OIL COMPANY, et al., Appellees.

No. 07–81–0238–CV.

Court of Appeals of Texas, Amarillo.

Oct. 31, 1983.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellants.

Tabor & Tabor, Warren G. Tabor, Jr., Levelland, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

■ This suit to cancel an oil and gas lease requires us to decide whether unconditional cancellation without a development option is an appropriate remedy when the implied covenant of reasonable development is breached. We conclude that it is not, and affirm the judgment of the trial court.

Appellants Don W. Slaughter, individually and as Trustee, George M. Slaughter, III, Tom V. Slaughter, Joe W. Roberts, Trustee, Richard L. Slaughter, Sallie Slaughter Lilly, Don Scott Slaughter, Malcolm G. Stewart and Catherine Graeme Stewart are the successors in interest of the original lessors of 1593.9 acres in Bailey and Cochran Counties. The original lease, executed in 1944, reserved a ⅛ royalty and granted a primary term of ten years "and as long thereafter as oil and gas, or either of them is produced from said land by lessee." In 1979, the Slaughters, the Stewarts, Roberts, and Lilly leased the same acreage to appellant Rex P. Fuller, reserving a ⅙ royalty. They and Fuller (hereafter "Lessors") then sued the successors in interest of the 1944 lessees, seeking unconditional cancellation of that lease, except as to approximately 80 acres held by production. All defendants except appellees P.O. Smith and Ricone Enterprises, Inc., (hereafter "Lessees"), holders by assignment of approximately 177 non-producing acres under the 1944 lease, were eliminated from the case prior to trial.

Under the live pleadings at the time of the non-jury trial Lessors alleged a cause of action against Lessees for breach of the implied covenant to reasonably develop the leasehold estate, asserted that it was impossible to calculate the damages caused by Lessees' breach and asked for unconditional cancellation of that portion of the lease that included Lessees' acreage. After hearing evidence, the trial court refused to cancel the lease and denied Lessors any relief. The court filed findings of fact and conclusions of law that, as pertinent here, confirmed the legitimacy and viability of the 1944 lease and Lessees' interest therein and found that since 1974 a reasonable and prudent operator would have developed the property held by Lessees. The trial court also found that Lessors offered no proof of efforts made to ascertain damages, that Lessees intend to develop the property and that Lessors failed to prove the existence of any extraordinary circumstances entitling them to cancellation. In concluding its findings, the trial court noted that Lessors sought only cancellation and did not request an alternative or conditional decree that would mandate development of the property.

Lessors attack the judgment by a single point of error, asserting that cancellation is the only remedy that will protect them. Lessees respond with various defenses, but we have concluded that the determinative issue is whether a lease can be cancelled, when its implied covenant of reasonable development is breached, without first giving a lessee an opportunity to cure the default by developing the property. We conclude that, under this record, it cannot.

The basic principles that provide a framework within which to resolve the issue before us were collected by the Supreme Court in *W.T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27 (1929). The court first restated various propositions it characterized as settled by repeated decisions of the Supreme Court. It pointed out that an oil and gas lease invests the lessee with a determinable fee title to the oil and gas in place, a title that is lost when the land is no longer used for oil and gas exploration, production and development. It also observed that when a lease fails to define the lessee's development responsibilities after discovery of oil and gas in paying quantities, the law implies an obligation to develop with reasonable diligence. Because that obligation is a covenant, however, its breach is not an act of forfeiture. Instead, the lessor may sue for damages or "under extraordinary circumstances—where there can be no other adequate relief—a court of equity will entertain an action to cancel the

lease in whole or in part." *Id.,* 19 S.W.2d at 29.

The remedy of cancellation, is not, however, unconditional. In the concluding paragraphs of the opinion, the Supreme Court gave the lessee an opportunity to rejuvenate the lease:

And, despite our refusal to treat as a limitation or as a condition subsequent the implied covenant for reasonable development of premises leased for the mining of oil and gas, after they have been discovered, should there be a breach of such covenant for which an action for damages, for any reason, furnishes no adequate remedy, our courts, in the exercise of equitable jurisdiction, will compel the lessee to fully perform his obligation, which constitutes a fundamental consideration for, and object of, the lease, or submit to cancellation of the lease. 1 Black on Recission and Cancellation (2d Ed.) §§ 197, 198.

In *Grubb v. McAfee,* supra, [109 Tex. 527, 212 S.W. 464 (1919)], we pointed out that the courts could do complete justice without adjudging a lease forfeited or terminated for breach of implied obligations, relative to development, even in cases where redress was impossible under an award of damages. On that subject Mr. Merrill says:

"The extreme hardship of the straight-out forfeiture and the inadequacy of damages are both avoided by a unique form of relief which has received its chief development in Kansas—an alternative decree, requiring the lessee to do those things necessary to fulfill his obligations under the implied covenant, within a time fixed by the court, the lease to be forfeited and cancelled, in default of such performance." Merrill's Covenants Implied in Oil and Gas Leases, § 103, p. 246. *Waggoner Estate,* 19 S.W.2d at 32.

The principles stated in *Waggoner Estate* remain viable today. *See, e.g., Cleghorn v.*

*Dallas Power & Light Co.,* 611 S.W.2d 893, 897 (Tex.Civ.App.—Houston [14th Dist.]), *rev'd on other grounds,* 623 S.W.2d 310 (Tex.1981); *Wes-Tex Land Co. v. Simmons,* 566 S.W.2d 719, 722 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); *Guinn v. Clay,* 324 S.W.2d 254, 255 (Tex.Civ.App.—Amarillo 1959, writ ref'd n.r.e.); *Union Sulphur Co. v. Texas Gulf Sulphur Co.,* 42 S.W.2d 182, 185–88 (Tex.Civ.App.—Austin 1931, writ ref'd); *Scott v. Jackson,* 37 S.W.2d 1068, 1070 (Tex.Civ.App.—Eastland 1931, no writ); 2 W. SUMMERS, OIL & GAS §§ 461–462 (2nd ed. 1958).

■ The equitable remedy discussed in *Waggoner Estate* was summarized in *Wes-Tex Land Co. v. Simmons, supra,* 566 S.W.2d at 722, as follows:

In unusual circumstances, our courts in the exercise of equitable jurisdiction can enter a decree of cancellation. However, such decree should be conditional, that is requiring the lessee to do those things necessary to fulfill his obligation under the implied covenant within the time specified by the court or suffer cancellation.

Thus, the lessor's remedy for breach of the implied covenant of reasonable development is an action at law for damages or, if damages are incalculable, an action in equity for a decree of conditional cancellation that would require the lessee to develop the property within a reasonable time or forfeit the lease.

■ In this case, the Lessors alleged they could not calculate their damages, but disdained conditional cancellation, seeking instead to oust the Lessees without giving them an opportunity to cure their default. Thus, Lessors did not pursue a remedy cognizable under Texas law and, accordingly, the trial court correctly refused to cancel the lease.* The Lessors' point of error is overruled.

The judgment is affirmed.

---

* We realize that equitable principles are designed to alleviate harsh results caused by rigid application of legal principles. Thus, although a case may arise where the facts are so bad

that only unconditional cancellation will do justice, we observe that (1) we have not found a previous Texas case where the court thought